UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| UNITED STATES OF AMERICA, | Case No. 5:16-cr-00211-1 EJD |
|---|---|
| Plaintiff, | **ORDER DENYING MOTION TO VACATE CONVICTION UNDER 28 U.S.C. § 2255** |
| v. | |
| VILASINI GANESH, | Re: ECF No. 602 |
| Defendant. | |

Presently before the Court is Defendant Dr. Vilasini Ganesh's motion to vacate and set aside her conviction under 28 U.S.C. § 2255, arising from an alleged deficient *Faretta* hearing and ineffective assistance of counsel ("IAC"). ECF No. 602 ("Mot."). The Government filed its opposition to Dr. Ganesh's motion on February 28, 2023, ECF No. 609 ("Opp."), and Dr. Ganesh filed a reply on April 10, 2023. ECF No. 618 ("Reply"). Having considered the parties' arguments and evidence, the Court DENIES Dr. Ganesh's § 2255 motion to vacate her conviction.

## I.   BACKGROUND

On May 19, 2016, Dr. Ganesh was indicted for various counts of health care fraud and money laundering. ECF No. 1. Leading up to her trial, Dr. Ganesh's relationship with her trial counsel Mr. Daniel Horowitz deteriorated, purportedly due to counsel's decisions on trial strategy, witness management, and opening and closing arguments. Mot. 2–3. On October 17, 2017, less than a week before trial was scheduled to start, Mr. Horowitz filed a motion on Dr. Ganesh's behalf to be discharged as counsel and to either allow substitute counsel or Dr. Ganesh to proceed *pro se*, a motion that Judge Cousins heard the following day. ECF No. 169.

At the hearing on October 18, 2017, Judge Cousins heard statements from Mr. Horowitz, Dr. Ganesh, and a Mr. Guy Jinkerson, who was a third-party attorney Dr. Ganesh had been consulting and who had drafted several of her emails. 10/18/17 Tr. 3:5–4:17. After Mr. Jinkerson declined representation, Judge Cousins indicated to Dr. Ganesh that her "options [were] to go ahead at trial with Mr. Horowitz or to seek an opportunity to represent [her]self at trial." *Id.* 5:2–4. Judge Cousins also expressed that, if Dr. Ganesh wished to proceed *pro se*, "it would have to be after a full opportunity to evaluate [her] competency in making that decision and to make sure [she] understood the many downsides of that decision," which he could only undertake at the earliest the next day. *Id.* 5:4–13. After two separate recesses, during which Dr. Ganesh had the opportunity to consult with her family and Mr. Horowitz, Dr. Ganesh indicated to Judge Cousins that she "decided to go with an attorney." *Id.* 10:1–3.

Dr. Ganesh's trial began on October 23, 2017. ECF No. 191. During trial, Mr. Horowitz advanced a defense of "not guilty by reason of insanity" ("NGRI"). *See* ECF No. 31. The jury convicted Dr. Ganesh on five counts of health care fraud and five counts of false statements, while acquitting her on conspiracy and money laundering charges. ECF No. 281.

## II. LEGAL STANDARD

Pursuant to 28 U.S.C. § 2255, a federal prisoner may move to vacate, set aside, or correct a sentence by demonstrating (1) the sentence was imposed in violation of the Constitution or laws of the United States, (2) the court was without justification to impose such a sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) that the sentence is otherwise subject to collateral attack. "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b).

## III. DISCUSSION

Dr. Ganesh contends that the trial court denied her the right to proceed *pro se* in violation of *Faretta v. California*, 422 U.S. 805 (1975). Additionally, she also argues that Mr. Horowitz failed to provide effective assistance during her criminal trial. The Court addresses each in turn.

### A. *Faretta* Hearing

Dr. Ganesh takes the position that Judge Cousins apparently misinterpreted her statement, "I'm going to—decided to go with an attorney," as abandoning her demand to proceed *pro se*. Mot. 16. Additionally, Dr. Ganesh argues that the Court led her to believe that she would not have adequate time to prepare for trial. Mot. 18. In response, the Government contends that Dr. Ganesh did not make an *unequivocal* request for self-representation. Opp. 12.

"The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants the accused personally the right to make his defense." *Faretta v. California*, 422 U.S. 805, 819 (1975). To invoke the right of self-representation, a defendant's waiver of counsel must be "timely, not for the purposes of delay, unequivocal, and knowing and intelligent." *United States v. Audette*, 923 F.3d 1227, 1234 (9th Cir. 2019) (quoting *United States v. Erskine*, 355 F.3d 1161, 1167 (9th Cir. 2004)). "If a defendant equivocates, he is presumed to have requested the assistance of counsel." *Clark v. Broomfield*, 83 F.4th 1141, 1150 (9th Cir. 2023) (internal brackets omitted). Courts also consider the "expression of a preference for counsel over representing himself" or an "[e]motional or impulsive requests for self-representation" to be equivocal requests. *Id.* In assessing whether a request was unequivocal, courts should consider the "whole record," and must "indulge in every reasonable presumption against waiver" of counsel. *Id.*

Having reviewed Dr. Ganesh's motion to substitute counsel and the transcript from the hearing on October 18, 2017, the Court finds that Dr. Ganesh did *not* make an unequivocal request to proceed without counsel. To begin, Dr. Ganesh's motion for substitution can hardly be construed as an unequivocal request for self-representation, when it itself is a dual request "to *either* allow substitute counsel or to allow her to proceed pro per." ECF No. 169 (emphasis added). Even if this does not alone render the request equivocal, the record also supports a finding of equivocation. The hearing with Judge Cousins began with a discussion regarding a potential substitute counsel—who then appeared at the motion hearing and expressly declined representation—as opposed to one regarding Dr. Ganesh's desire for self-representation. *See* 10/18/17 Tr. 6:16–21 ("Dr. Ganesh, one of the alternative requests in the paper presented to me by Mr. Horowitz was – well, there are two. One was that another attorney was going to represent

you, and there's not another attorney who's prepared to represent you. And, second, was the concept that you wish to represent yourself."). Moreover, when Judge Cousins asked Dr. Ganesh about what she wished to do, she responded that she was "very confused right now," "just overwhelmed," and asked for an opportunity to call her mother. *Id.* 7:18–9:1. Dr. Ganesh's emotional and evasive response, along with her request for additional time to consider and consult with family, is inconsistent with her assertion now, that she had made an unequivocal request to proceed *pro se*. *Cf. Clark*, 83 F.4th at 1150 ("Emotional or impulsive requests for self-representation are also considered to be equivocal."). And finally, and perhaps most clearly, Dr. Ganesh directly expressed to Judge Cousins after the recess that, "I'm going to – decided to go with an attorney." 10/18/17 Tr. 10:1–3. Regardless of whether she was requesting Mr. Horowitz's assistance or a civil rights attorney, this is nonetheless a direct expression that Dr. Ganesh did not wish to represent herself and, at the very least, the type of equivocal request that does not trigger a *Faretta* inquiry. *See Clark*, 83 F.4th at 1150 (noting that a "defendant's expression of a preference for counsel over representing himself" could indicate that a request is equivocal). Given that it is required to "indulge in every reasonable presumption against waiver," *Brewer v. Williams*, 430 U.S. 387, 404 (1977), the Court finds that Dr. Ganesh *did not* unequivocally request to proceed pro se and, therefore, her Sixth Amendment right to self-representation was not infringed by the denial of her motion for substitution.[1]

Dr. Ganesh contends that her desire for an attorney other than Mr. Horowitz constitutes an unequivocal request for self-representation. Reply 4–5. However, "a defendant is not entitled to an appointed attorney of his choice, nor is he entitled to a 'meaningful relationship' with counsel." *Clark*, 83 F.4th at 1155 (internal citation omitted). To the extent Dr. Ganesh suggests that her statement, "I'm going to – decided to go with an attorney," should be construed as "effectively [] stating that she wanted to proceed *pro se*," Reply 5, such an interpretation requires a significant

---

[1] The Ninth Circuit also found that the Court did not abuse its discretion in denying Dr. Ganesh's motions for substitution of counsel. *United States v. Belcher*, 2021 WL 2072730 (9th Cir. May 24, 2021), *cert. denied sub nom. Ganesh v. United States*, 142 S. Ct. 625 (2021).

Case No. 5:16-cr-00211 EJD
ORDER DENYING MOTION TO VACATE
CONVICTION UNDER 28 U.S.C. § 2255

4

semantic contortion of her direct statements to Judge Cousins, an inference the Court may not indulge when evaluating a waiver of the right to counsel. *See Brewer*, 430 U.S. at 404.

Dr. Ganesh also relies heavily on *U.S. v. Farias*, 618 F.3d 1049 (9th Cir. 2010). *See* Mot. 13–18. However, *Farias* does not assist her on the primary issue in contention—whether she had made an unequivocal request to proceed *pro se*. To the contrary, in *Farias*, the government did not dispute that Farias had made a "timely and unequivocal waiver of his right to counsel when he stated: 'Now, if you'd give me the opportunity, then, I would like to go pro se.'" *Farias*, 618 F.3d at 1052. No such request exists in this case. As the Court recounted, Dr. Ganesh avoided a direct response when Judge Cousins asked how she would like to proceed and, even after two recesses where she was given an opportunity to consult with her family, Dr. Ganesh affirmed that she "decided to go with an attorney." This is plainly distinguishable from the direct and affirmative statement in *Farias*, "I would like to go pro se."

Accordingly, the Court finds that Dr. Ganesh did not make an unequivocal request to proceed pro se and, therefore, cannot maintain her § 2255 motion on *Faretta* grounds.

### B.     Ineffective Assistance of Counsel ("IAC")

In her opening motion, Dr. Ganesh cited five instances of purported "deficient performance" by Mr. Horowitz: (1) he invoked an insanity defense over Dr. Ganesh's objection; (2) he conceded guilt over her objection; (3) he failed to retain and adequately prepare appropriate expert witnesses; (4) he failed to explain to the jury the elements of an NGRI defense; and (5) he told the jury during closing arguments that Dr. Ganesh's testimony was not credible. On reply, however, Dr. Ganesh focuses on Mr. Horowitz's performance during closing arguments, addressed in only three paragraphs. Reply 6–7.

To prevail on an ineffective assistance of counsel claim, a convicted defendant must show: (1) counsel's performance was "deficient," which requires a showing that counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) this deficient performance caused "prejudice," which requires showing that the errors were so serious as "to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Due to the difficulties inherent in

this evaluation, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. In assessing trial counsel's performance, the Court applies an objective standard of reasonableness and asks, "whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688. Review is "highly deferential"—a fair assessment of counsel's performance requires that every effort be made to eliminate the "distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Defendants, thus, must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy" since "[t]here are countless ways to provide effective assistance in any given case." *Id.*

In her opening motion, Dr. Ganesh's core IAC theory was that she instructed Mr. Horowitz not to assert an NGRI defense but he nonetheless did so over her objection. Mot. 20. Dr. Ganesh is correct that "counsel cannot impose an insanity defense on a non-consenting defendant." *United States v. Read*, 918 F.3d 712, 720 (9th Cir. 2019). However, the Government presented a declaration from Mr. Horowitz containing significant and contemporary evidence that Dr. Ganesh had, in fact, consented to and advocated for the assertion of a mental health defense throughout the pretrial proceedings and trial. *See* Nedrow Decl. Ex. 3 ("Horowitz Decl.") ¶ 87 ("Vilasni Ganesh . . . vigorously supported the mental state defense."); *see also* Nedrow Decl. Ex. 6 (Dr. Ganesh asking in August 2017 email "Why do there a need to even hold a Competency hearing.???  There should NOT even be a Competency hearing Based on those 2 reports.?"), Ex. 7 (Sept. 2017 email from Dr. Ganesh asking "why the Govt Not allow the mental Incompetence Defense.???"), Ex. 8 (mid-trial email from Dr. Ganesh stating ""Mental issues or craziiness is Not my fault" and that the insurance companies "drove me to Crazzy"). Mr. Horowitz's declaration also detailed his efforts in retaining expert witnesses and investigator (Horowitz Decl. ¶¶ 30–40, 65, 93; *see also* Nedrow Decl. Exs. 4, 5), Dr. Ganesh's admissions made to FBI agents (*id.* ¶¶ 17–18), and evidence of the false testimony she had made on the stand (*id.* ¶¶ 133–142), all of which rebut the additional IAC theories in Dr. Ganesh's initial motion.

Perhaps recognizing the strength of the Government's rebuttal evidence, *see* Reply 6 (acknowledging that Mr. Horowitz met "at least the bare minimum required by an attorney in his position"), Dr. Ganesh pivots in her reply to focus only on the statements Mr. Horowitz made at closing arguments. Reply 7. Specifically, she takes issue with Mr. Horowitz telling the jury that the issue of insanity was "up to you," that Dr. Ganesh was too "messed up mentally" to be held accountable, and that she was "basically nuts." *Id.* However, as Dr. Ganesh appears to have conceded by abandonment, she *had* consented to and supported the mental health defense presentation leading up to and through trial. *See, e.g.*, Horowitz Decl. ¶¶ 87–91. The general tenor of Dr. Ganesh's reply arguments appears to be her dissatisfaction with how Mr. Horowitz argued and presented the mental health defense to the jury at closing. However, "[a] represented defendant surrenders control over tactical decisions at trial while retaining the right to be the 'master' of his or her own defense. Counsel can choose 'the objections to make, the witnesses to call, and the arguments to advance.'" *United States v. Read*, 918 F.3d 712, 720 (9th Cir. 2019) (internal citation omitted). To that end, the Court does not find that Mr. Horowitz's closing argument statements were so unreasonable and his performance so deficient that Dr. Ganesh was not accorded her Sixth Amendment right to counsel.[2] *Strickland*, 466 U.S. at 687.

## IV. CONCLUSION

Based on the foregoing, Dr. Ganesh's motion to vacate her convictions under 28 U.S.C. § 2555 is DENIED.

**IT IS SO ORDERED.**

Dated: January 2, 2024

EDWARD J. DAVILA
United States District Judge

---

[2] Indeed, the results of Mr. Horowitz's performance would suggest otherwise, as Dr. Ganesh was acquitted of all conspiracy and money laundering counts. ECF No. 281.